Matthew M. Levy, J.
The third-party defendant moves, pursuant to subdivision 4 of rule 106 of the Rules of Civil Practice, for dismissal of the complaint-in-chief for legal insufficiency, and, as a consequence, for dismissal of the third-party complaint.
I agree with the movant that, under subdivision 2 of section 193-a of the Civil Practice Act, a third-party defendant may challenge the sufficiency of the complaint-in-chief and that the insufficiency of that complaint necessitates a resulting dismissal of the third-party complaint. (Twelfth Annual Report of N. Y. Judicial Council, 1946, pp. 208-212; Tripp, Guide to Motion Practice [rev. ed.], pp. 78-79; cf. Atlas Clothing Export Corp. v. Consolidated Edison Co., 4 Misc 2d 238.)
The action-in-chief is in equity for compensation and an accounting pursuant to contract. The agreement here involved was entered into between the defendants, sometimes hereinafter referred to as “ Estate ’ ’, and the plaintiffs, at times hereinafter referred to as “Artists ”. The Estate is that of Hammond E. Fisher, creator of the comic strip known as “Joe Palooka ”, with the plaintiffs as artists engaged to produce the continued strip. In pursuance of the contract, the defendants furnished certain statements to the plaintiffs, and it is claimed by the defendants that it is upon those statements that the plaintiffs’ compensation was to be computed. The plaintiffs duly objected thereto, and, as allegedly permitted by the contract, designated an accountant to examine the defendants’ books. The defendants refused such an examination. Whereupon this action was brought.
The plaintiffs seek judgment (in their complaint as amended by stipulation) that the defendants be directed to account for all moneys collected by the defendants and their agents and that all of the books and records of the defendants, their agents and employees relating to earnings and income attributable to the subject matter of the contract be made available for the accounting. The defendants served a third-party complaint against the McNaught Syndicate, Inc. (hereinafter on occasion referred to as the “Distributor”), based upon a contract between the defendants and the Distributor, by which the latter was placed in charge of the financial set-up between the parties, including the duty to furnish statements to the defendants. The defendants had relied upon the statements received from *195 the Distributor in supplying their statements to the plaintiffs.
It is the contention of the .moving third-party defendant that the contract between the Estate and the Artists is one purely of employment and not of any other relationship, and that the only proper cause of action arising out of the written contract relied on is one at law as between an employee and an employer for the recovery of compensation for services rendered and the fact that the compensation may be measured by percentages of income, gross or net, does not justify a suit in equity for an accounting, in contradistinction to an action at law, ancillary to which may be available the procedural remedies of examination and discovery.
If the movant’s premise as to the effect of the contract is correct, its contention as to the law is correct (Goldwurm v. Levey, 135 N. Y. S. 2d 213). On the other hand, if there was a fiduciary relationship of some kind between the Estate and the Artists, the Artists would be entitled to maintain this equity action to compel the Estate to account for the sums received by it, since the Artists’ compensation was to be measured by such income (Rhodes v. Little Falls Dairy Co., 230 App. Div. 571, affd. 256 N. Y. 559). The issue, then, is, first, as to the relationship created, and, secondly, as to the rights established, by the terms of the agreement.
In paragraph 4 of the contract, it is indeed stated that the Estate “ employs ” the Artists, and derivations of the word “ employ ” are used throughout the document. But it appears from paragraph 12 that it was expressly intended by the contract to “ constitute the Artists independent contracting Artists performing services for the Estate, subject only to such control by the Estate as to work and result as specifically set forth in this agreement”. And, per contra, it further appears in the same paragraph that the agreement “ does not constitute the Artists, or either of them, the agents, co-partners, co-venturers or licensees of the Estate ”. The questions before me, therefore, are: Does the contract as a whole give rise to a simple master-servant relationship ? — in which case the complaint is clearly insufficient. If not, is there any fiduciary status established? — in which case the complaint sets forth a cause of action on that ground. If not, is there any other contractual basis for the imposition of an obligation to account? The answers to these questions require a precise analysis of the entire written agreement, which consists of 17 printed pages, making up 32 numbered as well as other paragraphs.
By the terms of the contract, the Artists are to perform their services exclusively for the Estate, and it is recognized that *196 these services ‘ ‘ are of a unique, original and extraordinary character The basic time the contract is to run is 20 years. What the Artists produce becomes the property of the Estate. So long as the Artists are employed by the Estate they are to be paid stated percentages of the gross annual income derived from distribution of the cartoon strip by way of publication, with additional compensation for services rendered, also stated in percentages based upon certain royalties and other remuneration derived by the Estate. There is to be no charge to the Estate for expenses incurred in the production, delivery and distribution of the strip, all of which are to be borne by the Artists, and the Artists agree to indemnify the Estate and hold the Estate harmless as to such items. The subject of further protection and indemnification to the Estate is covered in paragraph 17. Since the Artists bear the primary responsibility and all expenses for the production, exploitation and promotion of the strip, the Estate is not unreasonably to withhold its consent to the employment of, nor base any disapproval of, any employee engaged by the Artists solely upon the question of the artistic qualifications of such person. The Artists are to submit proposals for promotion, exploitation, publicity and advertising to a representative designated by the Estate to receive such proposals who, in turn, communicates the Estate’s consent or disapproval. In the event of the death of the plaintiff Boyle, the plaintiff Leff shall have the sole responsibility and obligations of the Artists under the contract, and some modification in the compensation in such circumstance is provided for. If the plaintiff Leff becomes physically or mentally incapacitated, the Estate is to have the right to retain substitute artists and script writers as may be necessary to continue the strip during Left’s incapacity, with deduction of the cost from the total compensation due to the plaintiffs. The other clauses of the contract are not presently pertinent.
It is obvious to me from this recitation that the contract includes manifold provisions which are totally unnecessary if there were solely a master-servant relationship. The master here would have complete authority to do any of the things which are required of the plaintiffs, thus making all of these clauses unnecessary if the defendants were the master. The master would also have complete authority to do some of the things, the right to do which is expressly reserved to the defendants by the agreement, for many things are vouchsafed to the plaintiffs which would be unnecessary if the defendants were master and could order these things anyway. Clearly, the contract places the plaintiffs in the position of an independent *197 contractor, but, in relation to a service of such kind, that has made it necessary to give the defendants, for example, some veto rights and other powers for their own protection.
It does not follow, from the relationship thus created, that the plaintiffs are entitled to sue in equity for an accounting. The cases cited by the movant present the requirement that a fiduciary responsibility is a necessary prerequisite to an accounting and clearly establish that a royalty or percentage agreement per se does not ipso facto establish a fiduciary relationship between the parties (Terner v. Glickstein & Terner, 283 N. Y. 299; Goodman & Co. v. New York Tel. Co., 285 App. Div. 404, 887, affd. 309 N. Y. 258; Mezz v. Swim Prods. Co., 138 N. Y. S. 2d 643, affd. 1 A D 2d 844; see, also, McClintock, Equity [2d ed. 1948], § 200, and 4 Pomeroy, Equity Jurisprudence [5th ed. 1941], § 1421). While these precedents generally concern salesmen, I believe, nonetheless, that they are apposite. On the other hand, the plaintiffs have not pointed to any authority which would permit an accounting in this situation on the basis solely of the instant contractual ties between the parties, as thus far delineated.
Nevertheless, I do not agree with the movant that the complaint should be dismissed. For there are other clauses in the contract providing additional ingredients that now warrant consideration from another angle. By paragraph 5[d] the plaintiffs are awarded a drawing against the total compensation, which drawing is to be paid on or before the last business day in the month following rendition of service. Such payment to the plaintiffs “ shall be accompanied by a statement of the calculation, together with a report showing the total number of newspapers to which the strip was supplied and the gross revenue from such supplying.” And in paragraph 5[e] (1) it is provided that the Estate shall furnish between February 1 and February 20 in each year, as long as the plaintiffs are employed, “ a statement in writing of the gross income reported to the Estate as received in the prior year by the Distributor for the daily, Sunday and weekly newspaper publication of the cartoon strip and the amount actually received by the Estate in the prior year, * * * the deductions chargeable thereto, * * * the amount theretofore paid by the Estate on account of total compensation to the Artists and, as the case may be, the balance then due the Artists or the amount of overpayment to the Artists, if any ’ The paragraph then provides that the statement is binding and conclusive upon the Artists unless objection in writing is made in 10 days. There is a further provision for settlement of disputes (with a slight change of *198 that provision embodied in a modifying agreement) that, in the case of disagreement, a certified public accountant shall be designated by the Artists “ who shall, with the representatives of the Estate audit the books and records of the Estate, including accountings. made to the Estate, pertaining to the income from the cartoon strip ” as reported by the Estate’s Distributor. If, at the conclusion of such audit, a difference or dispute shall still exist between the Estate and the Artists, the matters at issue shall be submitted to a specified court for final determination, directly or by way of arbitration or reference. And provision is made for the imposition of the costs and expenses of the audit and of the proceedings in settlement of the dispute.
It is my view that, taking the contract as a whole, the plaintiffs are entitled to maintain the action upon the basis that it establishes a relationship between independent contractors under which the plaintiffs entrusted their work product to the defendants’ exploitation in return for specified percentage compensation, and under which, by its express terms, the defendants were required to make accountings and to permit audits so as to determine the compensation. (See Volk Co. v. Cauldwell-Wingate Co., 272 App. Div. 290 and Segar v. King Features Syndicate, 175 Misc. 25, mod. 262 App. Div. 221, affd. 289 N. Y. 579, motion for reargument denied 289 N. Y. 643.)
The motion to dismiss the complaint-in-chief is therefore denied, with leave to the third-party defendant to answer the third-party complaint within 20 days after service of a copy of the order hereon with notice of entry.